# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Crim. No. 16-320 (JRT/BRT)

Plaintiff,

**MEMORANDUM OPINION AND
ORDER DENYING DEFENDANT'S
§ 2255 MOTION**

v.

MICHAEL OSIRIS BOYD,

Defendant.

---

Amber M. Brennan, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for plaintiff.

Michael Osiris Boyd, Inmate No. 012528, Sherburne County Jail, 13880 Business Center Drive, Elk River, Minnesota, 55330-4608, *pro se* defendant.

Defendant Michael Osiris Boyd seeks relief from his sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel for failing to file a notice of appeal on Boyd's behalf. On August 6, 2019, the Court ordered an evidentiary hearing to determine whether Becker's performance was ineffective. The evidentiary hearing took place on March 4, 2020. The Court finds that Boyd's assertion that he instructed his attorney to file a notice of appeal on his behalf lacks credibility. Because Boyd fails to show that his counsel's performance was ineffective, the Court will deny his § 2255 petition.

**BACKGROUND**

**I.      FACTUAL BACKGROUND**

Boyd was indicted by a grand jury with one count of being a felon in possession of a firearm under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 922(g)(1). (Indictment, Nov. 22, 2016, Docket No. 19.)  Boyd's appointed counsel, James Becker of the Office of the Federal Defender, was Boyd's attorney throughout the proceedings, including sentencing.  (Docket No. 4.)

Boyd entered a plea agreement on August 10, 2017.  (Plea Agreement at 1, Aug. 10, 2017, Docket No. 53.)  This agreement reflected a dispute between Boyd and the United States over whether ACCA sentencing enhancements under 18 U.S.C. § 924(e) applied to Boyd.  (*Id.* at 3.)  The plea agreement included an appeal waiver as to Boyd's conviction but not as to his sentence.  (*Id.* at 8.)

At sentencing, the Court agreed with Boyd that the ACCA enhancement did not apply and found that the applicable Guideline range for Boyd was 151 to 188 months imprisonment.  (Sentencing Tr. at 11–12, 13, Dec. 21, 2017.)  The Guideline range was higher than the statutory maximum of 120 months.  (*Id.* at 13.)  The Court granted a slight variance and sentenced Boyd to 110 months.  (Am. Sentencing J. at 2, Feb. 20, 2018, Docket No. 81.)  Boyd did not appeal his sentence.  The United States initially filed a notice of appeal regarding the Court's conclusion that ACCA sentencing enhancements did not apply, but later withdrew its appeal.  On December 20, 2018, Boyd filed a pro se petition

under 28 U.S.C. § 2255 to vacate, correct, or set aside his sentence.  (Mot. to Vacate, Docket No. 86.)  He argued that his counsel was constitutionally ineffective in two respects.  First, Boyd argued that his counsel failed to file an appeal despite his request that his counsel do so.  (Def.'s 2d Mem. Supp. at 3–6, Jan. 9, 2019, Docket No. 89.) Second, Boyd argues that his counsel gave him bad or insufficient advice during the plea stage. (*Id.* at 6-7.)

The Court, in an Order dated May 31, 2019, denied Boyd's § 2255 Motion as to the second ground "because his allegations d[id] not demonstrate that his counsel's advice was constitutionally unreasonable and are otherwise wholly incredible in light of the record." (Order at 2, Docket No. 96.)  However, the Court noted that the "first ground for relief may be meritorious depending on the veracity of [Boyd's] allegations"[1] and ordered Becker to submit "an affidavit stating his recollections with respect to Boyd's first claim." (*Id.*)

On July 8, 2019, Becker filed an affidavit, alleging that, on January 4, 2018—the day the sentencing judgment was filed, thus beginning the 14-day deadline to appeal—Boyd affirmatively declined to appeal his sentence.  (James Becker Aff. at 2, Docket No. 100.) Becker also averred that he made a contemporaneous note recording Boyd's decision

---

[1] In an affidavit, Boyd recalled Becker asking Boyd "Would you like to appeal?"  They then discussed the appeal process, and Boyd then allegedly told Becker, "Why not appeal?" (Def.'s 2d Mem. Supp., Ex. A at 2–3.)  Boyd says that he understood this as meaning that Becker would file a notice of appeal.  (*Id.* at 3.)

during that meeting, while still in Boyd's presence.  (*Id.*)  Because there was a question of fact, the Court ordered an evidentiary hearing to conduct a credibility determination. (Evidentiary Hearing Order, Aug. 6, 2019, Docket No. 104.)

## II.  THE HEARING

The evidentiary hearing took place on March 4, 2020.  (Hr'g Tr. at 1, Docket No. 119.)  Boyd testified that, on December 21, 2017, immediately following his sentencing, "I asked [Becker] in like a question form what he thought about direct appeal now that I wasn't an armed career criminal, and he told me that we would speak more later, that he would be able to see me at the jail at Sherburne County."  (Hr'g Tr at 7, March 11, 2020, Docket No. 119.)  Becker testified that, on the day of the sentencing hearing, he met with Boyd for approximately twenty minutes prior to going into the courtroom and, "specifically noted that [he] would be seeing [Boyd] again later on a different day at Sherburne County jail to then review what happened that day, the results of the sentencing hearing, any issues related to a potential appeal, et cetera."  (*Id.* at 40.)  Becker does not recall speaking with Boyd immediately following the sentencing hearing; he testified that "the time was then spent on giving him some time to meet with his family in the courtroom."  (*Id.*)

On January 4, 2018, Becker visited Boyd at the Sherburne County Jail.  (*Id.* at 8.) Boyd testified that, at this meeting, he told Becker he wanted to appeal and Becker

assured him "it would be taken care of, meaning that he would file the appeal.  So I was under the assumption that the appeal was filed." (*Id.* at 9.)

Becker testified that he discussed with Boyd the pros and cons of an appeal during their January 4, 2018 meeting.  (*Id.* at 57.)  Specifically, Becker recalls explaining to Boyd the risk of cross-appeal by the government; he believed "that [Boyd] understood what my recitation of the potential pros and cons were.  I believe he understood what I intended by saying all those, and I believe that he agreed with me that it was a risk not worth taking, again in light of, significantly, in light of the actual sentence he ended up receiving." (*Id.* at 58.)  He further testified that, during their meeting, Boyd's mood seemed positive about the sentence he ended up receiving.  (*Id.*)  In addition to his testimony, Becker provided notes taken during the January 4, 2018 meeting with Boyd; he testified that the equal sign with a slash mark through it, followed by the word "appeal," meant that Boyd agreed not to appeal due to the risk of a cross appeal by the government.  (*Id*. at 56; Def. Ex. 2., Mar. 2, 2020, Docket No. 116.)

Following the January 4, 2018 meeting, Boyd never contacted Becker regarding the appeal.  (Hr'g Tr. at 61.)  Becker testified that he was not aware that Boyd wanted to appeal until Boyd had filed his § 2255 petition, nearly one year after the sentencing.  (*Id.* at 63.)

## DISCUSSION

### I.    STANDARD OF REVIEW

Section 2255 permits a prisoner held in federal custody to move a sentencing court to "vacate, set aside or correct" a sentence.  28 U.S.C. § 2255(a).  Section 2255 relief "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  *Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).

A defendant has the right to effective assistance of counsel at all critical stages of a criminal proceeding.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("[T]he Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970)).  "The purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial."  *Strickland*, 466 U.S. at 689.

To assess whether counsel's performance rises to the level of ineffective assistance, the Supreme Court has developed a two-prong test: (1) a petitioner must show that their counsel's performance "fell below an objective standard of reasonableness" under prevailing professional norms, and (2) they "must show that the deficient performance prejudiced the defense."  *Id.* at 687–88.  Prejudice is presumed where counsel's deficient performance led to the "forfeiture of a proceeding," such as the

defendant's right to appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000). When a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions. *Garza v. Idaho*, 139 S. Ct. 738, 746 (2019). In other words, when a defendant alleges ineffective assistance of counsel on the grounds that counsel failed to file a notice of appeal, the defendant's § 2255 motion will succeed if the defendant shows "that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 484).

## II.    FAILURE TO FILE APPEAL

Whether Becker's performance rose to the level of ineffective assistance turns on the credibility of Boyd's claim that he asked Becker to file a notice of appeal on his behalf. Boyd's story of when and how he asked Becker to file a notice of appeal on his behalf changed from his § 2255 petition and affidavit to his testimony during the evidentiary hearing. For example, at the evidentiary hearing, Boyd testified that he told Becker he wanted to appeal in the moments following the sentencing. Boyd neither mentioned this conversation in his § 2255 petition nor his affidavit; it was asserted for the first time during the evidentiary hearing. In fact, at the evidentiary hearing both Boyd and Becker agreed that they left the sentencing hearing with a mutual understanding that Becker would visit Boyd in jail on a later date, at which time they would discuss the potential for appeal.

Boyd's testimony about the January 4, 2018 meeting is further contradicted by that of Becker, who provides relevant notes indicating that he discussed the appeal process with Boyd, who decided not to pursue it.[2]  Becker's affidavit states he "spoke with Mr. Boyd about his appeal rights . . . Mr. Boyd affirmatively declined to exercise his right to appeal, understanding that this means that no Notice of Appeal would be filed on his behalf."  (Aff. of James Becker ¶¶ 4–5, Jul. 8, 2019, Docket No. 100.)  His testimony at the hearing and the contemporaneous notes are consistent with that recollection.   In addition, Boyd's actions following the January 4, 2018 meeting are inconsistent with that of a person who believed to have an appeal pending.  For example, he did not contact Becker once to inquire about the status of his appeal and Becker was not aware that Boyd purportedly wanted to appeal until his § 2255 petition was filed.  For these reasons, the Court concludes that Boyd's claim lacks credibility and that Becker's performance did not rise to the level of ineffective assistance.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's § 2255 petition [Docket No. 86] is **DENIED**.

---

[2] The Court recognizes that Becker could have taken greater care in the legibility and clarity of his notes, and it expects that attorneys from both the U.S. Attorney's Office and the Federal Defender's Office will, in the future, be mindful of the importance of such legibility and clarity.  That said, considering the whole record before the Court, Becker's less-than-ideal record keeping does not rise to the level of objectively unreasonable behavior.

DATED:  July 10, 2020
at Minneapolis, Minnesota.

_____

JOHN R. TUNHEIM
Chief Judge
United States District Court